UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JANE DOE, individually
and as parent and next friend
of his minor children MINOR
DOE #1, MINOR DOE #2, and
MINOR DOE #3,

                                 Case No. _____
                                 Hon. _____

        Plaintiffs,

v.

HOWELL PUBLIC SCHOOLS, LIVINGSTON
EDUCATIONAL SERVICE AGENCY, and
MICHIGAN DEPARTMENT OF EDUCATION,
ERIN MACGREGOR, in her individual capacity;
LISA ("LIZA") KELLY, in her individual capacity;
TIMOTHY MOORE, in his individual capacity;
JILL OSBORN, in her individual capacity; JASON
SCHROCK, in his individual capacity; MICHELE
SCHAFER, in her individual capacity; MALISSA
PATRICK, in her individual capacity; MARCI
MOLONEY, in her individual capacity; MICHAEL
HUBERT, in his individual capacity; and, for
prospective relief only, MICHAEL RICE,
in his official capacity, CHANTEL MOZDEN,
in her official capacity, SUSAN LANGDON,
in her official capacity; and THOMAS LANGDON,
in his official capacity,

        Defendants.

## <u>COMPLAINT</u>

Plaintiff JANE DOE, by and through counsel, hereby bring this Complaint against Howell Public Schools ("HPS"), Livingston Educational Service Agency ("LESA"), and the Michigan Department of Education ("MDE"), and the individual Defendants named herein. This case arises from systemic violations affecting three siblings and retaliation against their parent-advocate, stating as follows:

## I.   <u>JURY DEMAND</u>

Plaintiffs hereby seek trial by jury for any claims so triable.

## II.   **JURISDICTION AND VENUE**

1. This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; and 42 U.S.C. § 1983 based on violations of the First and Fourteenth Amendments.

2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201 and injunctive relief pursuant to 28 U.S.C. § 2202.

4. To the extent relief is sought against the state for ongoing violations of federal law, Plaintiffs seek prospective injunctive relief.

5. Venue is proper in this district under 28 U.S.C. § 1391(b), as all events giving rise to the claims occurred in Livingston County, Michigan.

## III.   PARTIES

6. Plaintiff JANE DOE is the parent and legal guardian of her minor children, MINOR DOE #1, MINOR DOE #2, and MINOR DOE #3, all of whom are students residing in Livingston County, Michigan.

7. Defendant Howell Public Schools is a public school district organized under the laws of the State of Michigan and receives federal financial assistance.

8. Defendant Livingston Educational Service Agency is an intermediate school district responsible for overseeing and providing special education services in the region, including for HPS.

9. Defendant Michigan Department of Education is the state educational agency charged with overseeing implementation of federal and state education laws, including IDEA.

3

10. Erin MacGregor served as Superintendent of HPS and was responsible for district-wide compliance; she received notice of and had authority to correct violations yet failed to do so. She is sued in her individual capacity under 42 U.S.C. § 1983.

11. Lisa ("Liza") Kelly served as Assistant Superintendent/HR Director/in-house counsel and custodian of records; she engaged in or ratified retaliation and records suppression and improperly restricted attorney–client communications and access to records. She is sued in her individual capacity under 42 U.S.C. § 1983.

12. Timothy Moore served as principal/administrator (Highlander Way Middle School) and imposed unlawful communication restrictions that obstructed parental participation. He is sued in his individual capacity under 42 U.S.C. § 1983.

13. Jill Osborn served as a teacher consultant and personally participated in predetermination, falsification/backdating of documents, retaliatory IEP changes, and denial of accommodations. She is sued in her individual capacity under 42 U.S.C. § 1983;

14. Jason Schrock served as a high school administrator linked to service denials and retaliatory practices affecting the Doe children. He is sued in his individual capacity under 42 U.S.C. § 1983.

15. Michele Schafer served as a teacher consultant who coordinated or ratified discriminatory exits, refused to revise goals despite regression, and backdated IEPs, directly harming the Doe children. She is sued in her individual capacity under 42 U.S.C. § 1983;

16. Malissa Patrick served as Director of Special Education for LESA and engaged in predetermination, retaliation, obstruction of records, and unlawful "communication restrictions." She is sued in her individual capacity under 42 U.S.C. § 1983.

17. Marci Moloney served as Accountability/Compliance Officer for LESA; she mishandled multi-law records requests and improperly narrowed IDEA/504/FERPA access. She is sued in her individual capacity under 42 U.S.C. § 1983.

18. Michael Hubert served as Superintendent of LESA; he maintained systemic oversight yet failed to enforce compliance across HPS and within LESA's purview. He is sued in his individual capacity under 42 U.S.C. § 1983.

19. Michael Rice in his official capacity as State Superintendent of Public Instruction, is added as a defendant for prospective declaratory and injunctive relief based on his supervisory responsibility for ensuring the Michigan Department of Education's statewide compliance with IDEA, Section 504, and the ADA.

20. Chantel Mozden supervised OSE complaint decisions and signed determinations that tolerated or approved outcomes despite substantiated procedural violations. She is sued in her official capacity only for prospective declaratory and injunctive relief under IDEA.

21. Susan Langdon served as an OSE investigator for complaints regarding Mave and Mitchel, excusing altered/backdated IEPs and procedural violations. She is sued in her official capacity only for prospective declaratory and injunctive relief under IDEA.

22. Thomas Langdon served as an OSE investigator for Shelby's complaints, minimizing violations substantiated elsewhere and operating despite conflict-of-interest concerns. He is sued in his official capacity only for prospective declaratory and injunctive relief under IDEA (Count I).

## IV.   FACTUAL BACKGROUND

### A.  Facts Related to MINOR DOE #1

23. MINOR DOE #1 is a minor child who previously received services under an IEP at Howell Public Schools, with oversight and substantive involvement from the Livingston Educational Service Agency in the decision-making process.

24. MINOR DOE #1 was improperly exited from eligibility under Specific Learning Disability in the area of Reading Fluency. Based on Defendants' Eligibility Recommendation, her qualifying category was changed to Emotional Impairment while she was placed under an Individualized Education Program ("IEP") designated as Other Health Impairment. This constituted violations of IDEA, Section 504, ADA, and MARSE.

25. Despite these overlapping and inconsistent classifications, Defendants altered MINOR DOE #1's special education programming by eliminating her academic services and reducing her IEP to only a social work goal. This shift occurred even after repeated progress monitoring periods documented little to no improvement in her academic needs. In doing so, Defendants HPS and LESA denied meaningful parental participation and disregarded her

7

ongoing academic and behavioral challenges, in violation of IDEA, Section 504, ADA, and MARSE.

26. The Evaluation Review ("ER") meeting that resulted in these changes was procedurally flawed. The IEP team did not review or discuss MINOR DOE #1's educational data in a transparent manner, thereby denying Plaintiffs meaningful participation and undermining the validity of the eligibility determination. These failures violated IDEA, Section 504, ADA, and MARSE.

27. Although Defendants repeatedly offered to conduct an Independent Educational Evaluation ("IEE"), Plaintiffs did not dispute the underlying evaluation data. Instead, Plaintiffs disputed Defendants' interpretation of that data and the outcome reached.

28. By insisting on an unnecessary IEE rather than addressing the substantive disagreement, Defendants diverted the process, avoided correcting their improper eligibility determination, and further deprived Plaintiffs of transparency and meaningful participation, in violation of IDEA, Section 504, ADA, and MARSE.

29. The resulting IEP contained only a social work goal and omitted academic goals, despite MINOR DOE #1's behavior changes, ongoing disability-

related needs in reading, documented struggles in academic performance, and multiple progress monitoring periods showing little to no improvement. This omission violated IDEA, Section 504, ADA, and MARSE.

30. Plaintiffs repeatedly requested that the special education team reconvene to address the improper exit and MINOR DOE #1's limited to no progress along with restoration of services, but Defendants delayed or denied timely responses. These failures violated IDEA's child find and reevaluation requirements, as well as Section 504, ADA, and MARSE.

31. On December 13, 2024, Plaintiff, through her attorney and advocate, received an improper Eligibility Report ("ER") and IEP for MINOR DOE #1.

32. Beginning December 16, 2024, Plaintiff and her representatives repeatedly sought corrections, but Defendants failed to issue a Prior Written Notice ("PWN") until January 30, 2025, more than six weeks later. In early February 2025, Plaintiffs began requesting IEP meetings to address errors, regression, and missing services, but Defendants ignored or delayed those requests, obstructing parental participation. As a result, Plaintiffs filed a state complaint in mid-February 2025. These failures violated IDEA, Section 504,

ADA, FERPA, and MARSE, and further demonstrate systemic retaliation and obstruction of parental rights.

33. Records related to MINOR DOE #1's education were withheld, redacted, or incompletely produced in violation of FERPA, IDEA, MARSE, Section 504, and ADA. These failures deprived Plaintiffs of timely access to educational information, impeded Plaintiff Jane Doe's ability to advocate for her child, and denied them meaningful participation in the special education process.

34. Defendants failed to ensure that MINOR DOE #1 received a Free Appropriate Public Education ("FAPE"), despite her documented disabilities, lack of academic progress, and demonstrated need for continued specialized instruction. These failures violated IDEA, Section 504, ADA, and MARSE.

35. Defendants further denied MINOR DOE #1 a FAPE in the least restrictive environment, despite her continuing need for academic instruction and supports. These failures violated IDEA, Section 504, ADA, and MARSE.

36. Defendants also retaliated against Plaintiff for her advocacy on MINOR DOE #1's behalf. Retaliatory actions included manipulating mandated timelines, concealing or minimizing her lack of academic progress, restricting access to her educational records and IEP meetings, and denying

meaningful parental participation. These actions created a chilling effect on Plaintiffs' protected advocacy and violated IDEA, Section 504, ADA, MARSE, FERPA, and the First Amendment.

37. Defendants repeatedly mishandled MINOR DOE #2's eligibility determinations by applying improper criteria under the Pattern of Strengths and Weaknesses ("PSW") model. Howell Public Schools and Livingston Educational Service Agency evaluators imposed an unlawful requirement of "four areas of weakness" to qualify, contrary to IDEA and MARSE, which require only a pattern of deficits. Parents and advocates' objections identifying PSW errors were ignored, even after being documented side-by-side across 2019, 2022, and 2025 PSW worksheets. These actions violated IDEA, Section 504, ADA, and MARSE.

## B. Facts Related to MINOR DOE #2

38. MINOR DOE #2 is a minor child who was previously determined eligible under Specific Learning Disability in the area of Reading Fluency. She also presents with documented weaknesses in decoding, spelling, and written expression, supported by standardized assessments.

39. Defendants repeatedly mishandled MINOR DOE #2's eligibility determinations by applying improper criteria under the Pattern of Strengths

and Weaknesses ("PSW") model. Howell Public Schools and Livingston Educational Service Agency evaluators imposed an unlawful requirement of "four areas of weakness" to qualify, contrary to IDEA and MARSE, which require only a pattern of deficits. Parents and advocates' objections identifying PSW errors were ignored, even after being documented side-by-side across 2019, 2022, and 2025 PSW worksheets. These actions violated IDEA, Section 504, ADA, and MARSE.

40. Despite clear regression in reading fluency, with repeated findings of "limited to no progress," the district relied on report card grades and accommodations to justify denying specialized instruction. This reliance on generic grades violates the law and violated IDEA, Section 504, ADA, and MARSE.

41. The Evaluation Review (REED) and IEP processes were procedurally flawed. Draft ineligibility determinations and IEPs were circulated before meetings, predetermining outcomes. On multiple occasions, including January 29 and February 10, 2025, parents were presented with predetermined eligibility recommendations that excluded meaningful review or discussion. These procedural failures violated IDEA, Section 504, ADA, and MARSE.

42. On February 21, 2025, Plaintiff raised concerns regarding progress monitoring and eligibility errors for MINOR DOE #2 and began requesting meetings to address regression and missing services. Defendants delayed in responding and continued to circulate drafts with predetermined outcomes, obstructing parental participation. On May 30, 2025, Defendants improperly exited MINOR DOE #2 from special education despite documented deficits, and Plaintiff filed a state complaint the next business day to challenge the unlawful exit. These failures violated IDEA, Section 504, ADA, FERPA, and MARSE, and further demonstrate systemic retaliation and obstruction of parental rights.

43. Parents and advocates' requests for records necessary to prepare for the ER/IEP were delayed or denied. Service logs, teacher input forms, and documentation of actual fluency instruction were withheld or incomplete at the time of meetings. These failures violated IDEA, FERPA, Section 504, ADA, and MARSE by denying timely access to educational records and impeding meaningful participation.

44. Defendants failed to implement MINOR DOE #2's IEP as written. MINOR DOE #2's resource teacher admitted she was not providing individualized fluency services solely to MINOR DOE #2, despite the IEP requiring direct reading support. Compensatory services for lack of educational progress

13

were only offered belatedly (5.75 hours of fluency instruction) after parent advocacy and state complaints, not based on timely data. These failures violated IDEA, Section 504, ADA, and MARSE.

45. The Michigan Department of Education (MDE), in Complaint Decision #25-0068, found that the District failed to apply proper standards in determining MINOR DOE #2's eligibility and violated IDEA by not holding a lawful eligibility determination meeting. MDE ordered Howell Public Schools to convene another IEP Team meeting by May 30, 2025, with parental participation, to properly apply IDEA standards and make an eligibility determination consistent with federal and state law. These violations also implicated Section 504, ADA, and MARSE.

46. Defendants improperly exited MINOR DOE #2 from special education in May 2025 without any new standardized test data showing meaningful progress. Eligibility was revoked based on inflated fluency averages drawn from familiar passages and A/B grades earned with accommodations, while ignoring persistent deficits in reading fluency, decoding, and spelling. This exit resulted in a denial of a Free Appropriate Public Education ("FAPE") under IDEA, Section 504, ADA, and MARSE.

47. Defendants' decision to revoke eligibility in May 2025 also constituted retaliation against Plaintiffs for filing multiple state complaints and advocating for services. The timing of the exit, just 90 days after eligibility was reaffirmed with no meaningful assessments to justify such eligibility recommendation determinations and immediately following multiple state complaints, demonstrates the action was punitive rather than data-driven. By removing MINOR DOE #2 from special education immediately following protected advocacy, Defendants violated IDEA, Section 504, ADA, MARSE, and the First Amendment.

48. Defendants further obstructed parental participation by failing to provide accurate or timely progress monitoring reports, omitting data for goals that were in effect between January and February 2025, and by backdating ER and IEP documents to create the appearance of compliance with required timelines. These actions violated IDEA, Section 504, ADA, FERPA, and MARSE.

49. Beyond the retaliatory exit, Defendants engaged in a broader pattern of retaliation against Plaintiffs, including creating a hostile IEP climate, misrepresenting parental objections in official documents, and instructing staff not to communicate with the parents. These actions undermined

meaningful participation in the special education process and violated IDEA, Section 504, ADA, MARSE, FERPA, and the First Amendment.

## C. Facts Related to MINOR DOE #3

50. MINOR DOE #3 is a minor child eligible for special education under Autism Spectrum Disorder, with documented needs in math calculation, executive functioning, written expression, and social-emotional regulation, supported by standardized assessments and school data.

51. Defendants repeatedly mishandled MINOR DOE #3's IEPs by predetermining services and outcomes prior to meetings. Draft IEPs containing preset goals, accommodations, and service minutes were circulated before official meetings, obstructing genuine team deliberation and denying Plaintiffs meaningful participation, in violation of IDEA, Section 504, ADA, and MARSE.

52. Eligibility and service documentation were incomplete and inaccurate. The December 2, 2024 IEP omitted the legally required qualifying criteria for Autism Spectrum Disorder, and finalized IEPs dated December 9, 2024 and March 10, 2025 were backdated to earlier meetings, misrepresenting when decisions were made. These practices violated IDEA, FERPA, Section 504, ADA, and MARSE.

53. Defendants failed to implement agreed-upon services. In March 2025, social work and occupational therapy services verbally approved by the IEP Team were omitted from the finalized IEP, later excused as "clerical errors" and only corrected after a state complaint. This denied MINOR DOE #3 necessary supports in executive functioning, written expression, and social-emotional development, violating IDEA, Section 504, ADA, and MARSE.

54. Progress monitoring was inaccurate, incomplete, and misleading. Reports failed to include data from entire grading periods, recycled outdated data, and falsely reported "progressing as expected." Social-emotional and medical/health goals were often left unmonitored. These failures violated IDEA, Section 504, ADA, and MARSE.

55. When Plaintiff Jane Doe identified progress monitoring inaccuracies and requested IEP revisions to address MINOR DOE #3's regression in math, District personnel refused to make changes, stating that modifications could not occur while MDE complaints or mediation were pending. This refusal violated IDEA's requirement to revise the IEP when a child is not making expected progress, obstructed parental participation under MARSE, and constituted retaliation under Section 504, ADA, and the First Amendment.

56. Defendants further obstructed parental participation by denying access to educational records necessary to prepare for the March 5, 2025 IEP meeting,

including raw data trials, service logs, and documentation of program implementation. This violated IDEA, FERPA, Section 504, ADA, and MARSE.

57. Defendants unilaterally changed MINOR DOE #3's placement without convening an IEP Team or issuing Prior Written Notice. Despite written assurances that no changes would be made outside of an IEP meeting, the District made unilateral modifications to services and placement without parental involvement, an IEP Team meeting, or proper documentation (IEP, IEP amendment, or Prior Written Notice with procedural safeguards). These changes included: (a) elimination of resource program services, replaced with a generalized "support class"; (b) removal of dual-taught math, replaced with general education math; (c) elimination of sensory breaks, replaced with nonspecific "natural breaks"; and (d) replacement of IEP-documented supports with undocumented informal strategies (MDE Complaint Decision Findings of Fact, p. 2, ¶2.ii). These actions violated IDEA, Section 504, ADA, FERPA, and MARSE by changing placement and services unilaterally, obstructing parental participation, and denying a Free Appropriate Public Education ("FAPE").

58. Defendants failed to provide timely Prior Written Notice for parental requests. For example, following the January 24, 2025 meeting where an

additional writing goal was requested, no notice was issued for that parent
and advocate request. This violated IDEA, Section 504, ADA, and MARSE.

59. Records were falsified through backdating. Finalized IEP documents were
consistently dated to match earlier meetings despite being changed and
distributed later. This systemic practice of backdating obstructed Plaintiffs'
ability to challenge decisions within legal timelines, violating IDEA,
FERPA, Section 504, ADA, and MARSE.

60. Defendants retaliated against Plaintiff for her protected advocacy, including
filing state complaints and pursuing mediation. Retaliatory actions included
denying records, introducing post-meeting changes into finalized IEPs,
mischaracterizing parental objections as agreement, obstructing meeting
requests, cancelling scheduled mediation while conditioning future
mediation meeting on Plaintiffs dropping all open MDE state complaint,
restricting staff from communicating with the parents, refusing to revise the
IEP in response to regression, and using backdating to conceal violations.
These actions created a hostile climate, chilled advocacy, and violated
IDEA, Section 504, ADA, MARSE, FERPA, and the First Amendment.

## D. Facts Related to Parent Discrimination and Retaliation

61. In 2018, Defendants asserted that Plaintiff Jane Doe had Munchausen
Syndrome and used this false psychiatric label as a basis to bar her from

entering the school building. Plaintiffs did not learn of this assertion until July 2025.

62. Even if Defendants believed this perception, it constituted a "regarded as" disability under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, which prohibit discrimination on the basis of actual or perceived disability. Rather than affording rights and protections, Defendants discriminated against Plaintiff on the basis of this false psychiatric label.

63. Defendants further used this assertion as a retroactive pretext to obstruct Plaintiff's participation in the education of her children, including restricting her access to school facilities, interfering with her ability to attend meetings, and discouraging staff communication.

64. These actions were taken not only on the basis of a perceived disability, but also in retaliation for Plaintiff's protected advocacy. Such conduct violated IDEA, Section 504, ADA, MARSE, FERPA, and the First Amendment.

65. This pattern of retaliation extended into other aspects of Plaintiff's relationship with the District. After Plaintiff filed a state complaint in 2020, the following year the following year Howell Public Schools caused a 'building exclusion' to be issued that barred Jane Doe from a teaching assignment in one of its school buildings. District officials expressly stated

the exclusion was because, "The school does not feel it's an appropriate place for assignments for you due to the complaint you filed with the State Board of Ed. A couple of years ago." The email notification went on to state, "As a result, Howell Public Schools has requested your removal." Although Plaintiff does not seek damages for that employment action, it further demonstrates the retaliatory climate Defendants fostered against her protected advocacy.

## E. MDE OSE Guidance and Statewide Training Contradictions

66. The Michigan Department of Education, Office of Special Education ("MDE OSE") provides official training and guidance to districts and intermediate school districts regarding implementation of the Individuals with Disabilities Education Act ("IDEA") and the Michigan Administrative Rules for Special Education ("MARSE").

67. In statewide educator "Boot Camp" and "IEP Transcript" trainings, MDE OSE instructs that (a) predetermination of programs or placements before an IEP meeting constitutes a *substantive* denial of FAPE under 34 C.F.R. § 300.513; (b) meaningful parent participation must be prioritized over procedural timelines; and (c) progress-monitoring data must drive IEP revisions when regression occurs.

68. Despite this and other official guidance, Defendants Howell Public Schools and Livingston Educational Service Agency engaged in practices directly contrary to these standards. MDE OSE subsequently excused those same violations in state complaint decisions, illustrating a systemic inconsistency between MDE's training and enforcement functions. This inconsistency supports Plaintiffs' claim that administrative remedies were structurally futile and that violations were knowing rather than inadvertent.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

69. Plaintiffs pursued multiple administrative remedies and/or due process complaints, including filing numerous state complaints with the Michigan Department of Education (MDE), participating in mediation, and attempting alternative dispute resolution efforts. Several of these state complaints resulted in substantiated violations against Defendants, including findings that Howell Public Schools and Livingston Educational Service Agency failed to apply proper eligibility standards, improperly altered services, delayed Prior Written Notice, withheld records, and engaged in procedural violations that denied Plaintiffs meaningful participation.

70. Despite these efforts, exhaustion is excused in this case. Remedies are inadequate and futile where structural violations occurred; including

systemic backdating of IEPs, unilateral exits from eligibility, retaliatory restriction of services, retaliatory behavior by canceling meetings with conditioning future meeting on Plaintiffs dropping all open MDE state complaints, and obstruction of parental advocacy; and where claims arise under non-IDEA statutes, including Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), the Family Educational Rights and Privacy Act (FERPA, as paired with IDEA/504 rights), and the First Amendment to the United States Constitution. Plaintiffs also allege violations of IDEA and its implementing state regulations, including the Michigan Administrative Rules for Special Education (MARSE). Exhaustion is not required when plaintiffs seek relief unavailable under IDEA, such as damages for retaliation and discrimination, or when claims arise under statutes other than IDEA.

71. The contradiction between MDE OSE's published training guidance and its subsequent complaint decisions further demonstrates that administrative remedies were structurally futile and incapable of correcting systemic violations.

## V.    CLAIMS FOR RELIEF

### COUNT I

### (Violation of the Individuals with Disabilities Education Act)

72. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

73. The IDEA requires Defendants to identify, evaluate, and provide FAPE to children with disabilities in the least restrictive environment.

74. Defendants failed to timely and properly evaluate, identify, and serve MINOR DOE #1, MINOR DOE #2, and MINOR DOE #3 by applying unlawful eligibility standards, delaying Prior Written Notice, ignoring parental input, and withholding required records.

75. Defendants improperly exited MINOR DOE #1 and MINOR DOE #2 from special education without lawful reevaluations, valid eligibility determinations, or procedural safeguards.

76. Defendants further unilaterally altered MINOR DOE #3's services and placement without convening an IEP Team meeting, parental consent, or Prior Written Notice.

77. Defendants denied meaningful parental participation in the IEP process through predetermination, circulation of draft IEPs with preset outcomes,

restricting staff communication with Plaintiffs, and obstructing meeting requests.

78. Defendants failed to implement required services as written in the IEPs, including direct fluency instruction, occupational therapy, and social work supports, and misrepresented progress monitoring data.

79. Defendants' conduct contravened not only federal regulations but also MDE OSE's own statewide training that instructs school districts to implement those same federal standards.

80. These actions deprived the children of FAPE and caused academic regression, emotional distress, and developmental harm.

81. Plaintiffs seek equitable relief under IDEA, including compensatory education, tuition reimbursement, declaratory relief, and attorneys' fees and costs.

## <u>COUNT II</u>
### <u>(Violation of Section 504 of the Rehabilitation Act)</u>

82. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

83. Section 504 prohibits discrimination against individuals with disabilities in federally funded programs.

84. MINOR DOE #1, MINOR DOE #2, and MINOR DOE #3 each had qualifying disabilities and were denied access to appropriate services, accommodations, and educational opportunities, including access to academic instruction, timely evaluations, and necessary behavioral supports.

85. Defendants also discriminated against Plaintiff JANE DOE by regarding her as having a false psychiatric disability (Munchausen Syndrome) and excluding her from school facilities on that basis. Defendants further retaliated against her for protected advocacy, including filing complaints, requesting meetings, and challenging unlawful practices.

86. Defendants acted with deliberate indifference in failing to accommodate their disabilities and respond to parent advocacy.

87. Defendants' conduct caused the children to experience academic regression, stigma, and emotional distress.

88. Plaintiffs seek declaratory and injunctive relief, damages, and attorneys' fees.

89. Their deliberate disregard of MDE OSE's official IDEA implementation guidance further evidences knowledge and deliberate indifference.

## COUNT III

### (Violation of Title II of the Americans with Disabilities Act)

90. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

91. Defendants are public entities subject to Title II of the ADA.

92. The minor children were qualified individuals with disabilities within the meaning of the ADA.

93. Plaintiff JANE DOE was also regarded by Defendants as having a false psychiatric disability (Munchausen Syndrome) and was excluded from school facilities on that basis. Even if Defendants believed this false perception, it constituted a "regarded as" disability under the ADA. Defendants further retaliated against her for advocacy, including filing complaints, requesting meetings, and challenging unlawful practices.

94. Defendants excluded Plaintiffs from participation in and denied the benefits of educational services by reason of their disabilities, including removing them from eligibility, reducing their services, and substituting general education or unsupported "natural breaks" in place of required accommodations.

95. Defendants further retaliated against Plaintiffs for protected activity under the ADA, including filing state complaints, requesting IEP meetings, and

advocating for appropriate services. Retaliatory actions included unlawful exits from eligibility, backdating IEP documents, restricting staff communication with parents, and delaying Prior Written Notice.

96. Plaintiffs seek compensatory damages, equitable relief, and attorneys' fees.

## COUNT IV

**(Declaratory and Injunctive Relief re Educational Records — IDEA, Section 504, and ADA; FERPA-Referenced Standards)**

**(Against Howell Public Schools and Livingston Educational Service Agency; and, for prospective relief only, against Michael Rice, Chantel Mozden, Susan Langdon, and Thomas Langdon in their official capacities)**

97. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

98. IDEA (including 34 C.F.R. § 300.613 and §§ 300.618–300.621), Section 504 (including 34 C.F.R. § 104.36), and Title II of the ADA require timely parental access to education records, accurate recordkeeping, and procedures to inspect, review, and seek amendment of inaccurate or misleading records. FERPA provides the federal student-records standards public schools must follow.

99. Defendants failed to produce complete records for MINOR DOE #1, MINOR DOE #2, and MINOR DOE #3 in response to lawful parent requests, including raw data trials, service logs, documentation of IEP

implementation, and the underlying data used to determine eligibility and services.

100.     Defendants improperly redacted and withheld information, backdated finalized IEP documents, and failed to maintain accurate records.

101.     These failures violate IDEA's and Section 504/ADA's access and accuracy requirements and are inconsistent with FERPA's records standards and obligations, impeding meaningful parental participation and review.

102.     Plaintiffs seek declaratory and injunctive relief requiring accurate, non-backdated educational records; timely production of all education records (including underlying data and service logs); compliance with IDEA/Section 504/ADA inspection, review, and amendment procedures; and training/monitoring to ensure ongoing compliance. Relief against the State (if applicable) is sought only prospectively via the named OSE officials in their official capacities.

## COUNT V

### 42 U.S.C. § 1983 (First Amendment Retaliation)

**(Against Erin MacGregor, Lisa ("Liza") Kelly, Timothy Moore, Jill Osborn, Jason Schrock, Michele Schafer, Malissa Patrick, Marci Moloney, and Michael Hubert — individual capacities)**

103.     Plaintiffs incorporate all preceding allegations.

104.   JANE DOE engaged in protected speech and petitioning regarding her children's rights and school compliance.

105.   Each Individual Defendant knew of this protected activity and took adverse actions that would deter a person of ordinary firmness, including imposing or enforcing communication restrictions, predetermining eligibility and services, obstructing access to records and data, and orchestrating or ratifying unlawful exits and service changes.

106.   The protected activity was a motivating factor in the adverse actions, which proximately caused Plaintiffs' harms.

107.   Each Individual Defendant acted under color of state law and is liable for damages in an individual capacity.

## COUNT VI

**42 U.S.C. § 1983 (Fourteenth Amendment: Procedural and Substantive Due Process)**

**(Against Erin MacGregor, Lisa ("Liza") Kelly, Timothy Moore, Jill Osborn, Jason Schrock, Michele Schafer, Malissa Patrick, Marci Moloney, and Michael Hubert — individual capacities)**

108.   Plaintiffs incorporate all preceding allegations.

109.   Parents possess a protected liberty interest in directing their children's education, and students possess protected interests in accurate educational records and fair procedures.

110.     Individual Defendants deprived Plaintiffs of these interests by

predetermining eligibility and services; altering services and placements

without required procedures or accurate Prior Written Notices; falsifying or

backdating educational records; and obstructing access to the data necessary

for participation and review.

111.     Adequate process was not provided, and the conduct violated clearly

established rights and was arbitrary and conscience-shocking under the

circumstances.

112.     Each Individual Defendant is liable for damages in an individual

capacity.

## COUNT VII — 42 U.S.C. § 1983 (Monell Liability)
## (Against Howell Public Schools and Livingston Educational Service Agency)

113.     Plaintiffs incorporate all preceding allegations.

114.     The constitutional violations described herein were caused by

Defendants' official policies, decisions of final policymakers, and/or

longstanding customs having the force of law, including systemic backdating

of IEPs; predetermination through pre-drafted ER/IEP documents; unlawful

communication restrictions that impede parental participation; delayed or

missing Prior Written Notices; and obstruction of access to or amendment of records.

115.     These constitutional violations persisted even after MDE OSE issued formal guidance and trainings describing the very federal standards Defendants ignored.

116.     These policies and customs were the moving force behind Plaintiffs' First and Fourteenth Amendment injuries and caused damages.

117.     Plaintiffs seek declaratory and injunctive relief and compensatory damages where permitted, plus attorneys' fees and costs under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue declaratory relief finding that Defendants violated the rights of Plaintiff and her minor children under IDEA, Section 504, ADA, FERPA, and the Constitution;

2. Declare that Defendants violated the rights of Plaintiff and her minor children under IDEA, Section 504, ADA, FERPA, and the United States Constitution, including IDEA's implementing regulations (such as MARSE);

3. Order stay-put relief requiring Defendants to maintain each child's last valid and agreed-upon IEP placement and services during the pendency of administrative and judicial proceedings pursuant to 20 U.S.C. § 1415(j).

4. Award equitable remedies including compensatory education, tuition reimbursement, and restoration of improperly removed services;

5. Enter a permanent injunction requiring Defendants to:

   a) Cease retaliatory conduct against Plaintiffs;

   b) Maintain accurate educational records and cease backdating practices;

   c) Provide parents timely access to all records and data used in eligibility and IEP determinations;

   d) Comply with all obligations under IDEA, Section 504, ADA, and FERPA, including IDEA's implementing regulations (such as MARSE);

6. Award compensatory and punitive damages as permitted by law against Defendants Howell Public Schools and Livingston Educational Service Agency for deliberate indifference, retaliation, and constitutional violations;

7. Grant prospective injunctive and declaratory relief against the Michigan Department of Education (or, alternatively, the appropriate state official in

their official capacity) to ensure systemic compliance with IDEA, Section 504, ADA, and related federal requirements;

8. Require corrective action and monitoring, including staff training on compliance with IDEA, Section 504, ADA, FERPA, MARSE, and parents' constitutional rights to advocacy and participation;

9. Award reasonable attorneys' fees and costs under 20 U.S.C. § 1415(i)(3)(B), 42 U.S.C. § 1988, and other applicable statutes; and

10. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

CARLA D. AIKENS, P.L.C.

By: /s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
615 Griswold St., Suite 709
Detroit, MI 48226
(844) 835-2993
carla@aikenslawfirm.com

Dated: October 15, 2025

34