**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JANE DOE, *et al.*,

Plaintiffs,

v.

HOWELL PUBLIC SCHOOLS, *et al.*,

Defendants.

Case No. 2:25-cv-13260
Hon. Brandy R. McMillion
United States District Judge

______________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 17, 22, 28, 30, 50, 64) AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 59) AS MOOT**

Plaintiff Jane Doe brings this action individually and as Next Friend of her three minor children, Minor Doe #1, Minor Doe #2, and Minor Doe #3 (collectively, "Plaintiffs"), against Howell Public Schools ("HPS"), Livingston Educational Service Agency ("LESA"), the Michigan Department of Education ("MDE"), and various HPS, LESA, and MDE officials (collectively, "Defendants"). *See generally* ECF No. 1. Plaintiffs seek declaratory, injunctive, and monetary relief for alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; § 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; federal educational-records requirements under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; and the First and Fourteenth Amendments under

42 U.S.C. § 1983. ECF No. 1, PageID.2, 24-32. Presently before the Court are six Motions to Dismiss filed by various Defendants. ECF Nos. 17, 22, 28, 30, 50, 64. Also before the Court is Plaintiffs' Motion for Preliminary Injunction. ECF No. 59. The Motions are fully briefed, and the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained below, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 17, 22, 28, 30, 50, 64) and dismisses Plaintiffs' claims **WITHOUT PREJUDICE** pending exhaustion of the administrative remedies required by the IDEA. Because the Court dismisses the action in its entirety, Plaintiffs' Motion for Preliminary Injunction (ECF No. 59) is **DENIED AS MOOT**.

## I.

Plaintiff Jane Doe is the parent and legal guardian of Minor Doe #1, Minor Doe #2, and Minor Doe #3, all of whom reside in Livingston County, Michigan. ECF No. 1, PageID.3. Defendant HPS is the local public school district responsible for educating the minor children. *Id.* Defendant LESA is an intermediate school district that provides and oversees special-education services in the region. *Id.* The MDE is the state educational agency charged with overseeing implementation of the IDEA and other federal and state education laws. *Id.* The remaining Defendants are HPS, LESA, and MDE officials whom Plaintiffs allege participated in, ratified, or failed to correct the conduct challenged in the Complaint. *Id.* at PageID.4-6.

Plaintiffs' claims center around the special-education services provided to the three minor children and Jane Doe's efforts to advocate on their behalf. *Id.* at PageID.4-6. Minor Doe #1 previously received special-education services under an Individualized Education Program ("IEP"). *Id.* at PageID.7. Plaintiffs allege that Defendants improperly changed her eligibility classification, eliminated academic services despite documented lack of academic progress, failed to meaningfully consider educational data and parental input, delayed meetings and Prior Written Notice, and withheld records necessary for Jane Doe to participate in the special-education process. *Id.* at PageID.7-10.

Plaintiffs alleged similar violations concerning Minor Doe #2. Among other things, they contend that Defendants used improper criteria in evaluating Minor Doe #2's eligibility, predetermined eligibility decisions before IEP meetings, failed to provide required reading-fluency services, withheld records and progress-monitoring information, and ultimately exited Minor Doe #2 from special education on May 30, 2025. *Id.* at PageID.11-15. MDE Complaint Decision #25-0068 found that HPS failed to apply the proper eligibility standards and ordered HPS to convene another IEP Team meeting to make an eligibility determination consistent with federal and state law. *Id.* at PageID.14.

Minor Doe #3 is eligible for special education based on an Autism Spectrum Disorder diagnosis. Plaintiffs allege that Defendants predetermined Minor Doe #3's

services before IEP meetings, omitted required eligibility information from IEP documents, backdated finalized IEPs, failed to implement agreed-upon occupational therapy and social-work services, maintained inaccurate progress-monitoring data, withheld records, and unilaterally changed Minor Doe #3's services and placement without an IEP Team meeting or Prior Written Notice. *Id.* at PageID.16-19. Plaintiffs further allege that Defendants retaliated against Jane Doe for advocating for her children by, among other things, restricting communications with school staff, obstructing meeting requests, withholding records, refusing requested IEP revisions, and conditioning future mediation on Plaintiffs withdrawing pending MDE complaints. *Id.* at PageID.19-21. These allegations form the basis of Plaintiffs' IDEA claim and their related claims under § 504, the ADA, federal educational-records requirements, and § 1983.

Plaintiffs further allege that the challenged conduct deprived the minor children of a free appropriate public education ("FAPE"), and they seek, among other relief, stay-put protection, compensatory education, tuition reimbursement, restoration of removed services, accurate educational records, and injunctive relief requiring Defendants to comply with federal special-education requirements. *Id.* at PageID.32-34. Plaintiffs pursued several avenues of administrative relief before filing this action. They filed numerous state complaints with MDE, participated in mediation, and attempted alternative dispute resolution. *Id.* at PageID.22.

According to the Complaint, some of those proceedings resulted in findings that Defendants violated applicable special-education requirements. *Id.* But Plaintiffs did not complete the IDEA's due-process hearing procedures before filing this action. Instead, they allege that further exhaustion should be excused because the administrative remedies available to them are inadequate and structurally futile in light of systemic violations Defendants committed knowingly, including backdating the students' IEPs, unilateral eligibility exits from services or otherwise restricting services, obstruction of parental advocacy, and inconsistencies between MDE's published guidance and its resolution of Plaintiffs' state complaints. *Id.* at PageID.24, 32-33.

**II.**

Defendants now move to dismiss on numerous grounds. *See* ECF Nos. 17, 22, 28, 30, 50, 64. Common among their arguments is that Plaintiffs prematurely filed this action without completing the IDEA administrative process. The Court agrees with Defendants. While the instant Motions were pending, the Sixth Circuit decided *Alzandani v. Hamtramck Public Schools*, 176 F.4th 455 (6th Cir. 2026), addressing substantially the same exhaustion question presented here. Because *Alzandani* establishes that exhaustion is dispositive of this action at the present stage, the Court finds that the case is before it prematurely. Accordingly, the Court need not address the remaining arguments concerning the merits of Plaintiffs' claims

before dismissing the action in full without prejudice.

**A. IDEA Exhaustion and *Alzandani***

The IDEA establishes administrative procedures through which parents may challenge the identification, evaluation, educational placement, or provision of a FAPE to a child with a disability. *See* 20 U.S.C. § 1415. A parent may initiate the IDEA's administrative review process by filing a due-process complaint. 20 U.S.C. § 1415(b)(6). The parties then have an opportunity to resolve the complaint through the IDEA's resolution process before the matter proceeds to an administrative due-process hearing. *Id.* at § 1415(f)(1)(B). At the hearing, an impartial officer determines whether the child received a FAPE and may order appropriate relief. *Id.* at § 1415(f)(3)(E). IDEA authorizes an aggrieved party to bring a civil action only after that process has run its course. *Id.* at § 1415(i)(2)(A).

The Sixth Circuit recently explained the significance of that requirement in it's 2026 *Alzandani* opinion. *See* 176 F.4th 455. There, three parents alleged that Hamtramck Public Schools failed to meet their children's individualized special-education needs by failing to provide a full-time aide to one child with autism; failing to provide promised speech therapy and other services to another child with autism, who was routinely sent home after only one or two hours of school and sometimes placed in seclusion for students with "problem behaviors"; and refusing to evaluate a child with Down syndrome for special-education services. *Alzandani*, 176 F.4th

at 457-458. Two parents had filed complaints with MDE, obtained findings that the district had violated their children's right to a FAPE, and received corrective-action plans. *Id.* Nevertheless, none pursued the IDEA due-process complaint and hearing procedure before filing suit. *Id.* The parents instead brought claims under the IDEA, ADA, Rehabilitation Act, and Michigan law; contending that exhaustion should be excused because district-wide staffing and funding deficiencies produced systemic IDEA violations and made individualized administrative proceedings futile. *Id.*

The Sixth Circuit rejected that argument. It explained that the IDEA gives an aggrieved parent "'a right to bring a civil action' only if they are 'aggrieved by the findings and decision' of a due process hearing . . . that in one way or another deny the child a free and appropriate education." *Id.* at 459 (quoting 20 U.S.C. § 1415(i)(2)(A)). Thus, where a parent seeks relief for special-education harms centered on the denial of a FAPE, the administrative hearing is not merely a procedural formality preceding litigation; it is the statutory process through which the dispute must first be presented and developed. *Id.* ("The existence of a due process hearing "decision" . . . is the necessary preamble of a lawsuit brought under the IDEA. Without the injury created by a failed due process hearing, no cause of action under the IDEA exists."). That requirement extends beyond claims formally pleaded under the IDEA. The statute also requires exhaustion before a plaintiff may pursue claims under other federal laws when the plaintiff seeks "relief that is also

available under" the IDEA. 20 U.S.C. § 1415(l). Accordingly, when "the denial of a [FAPE] lies at the heart of" the action and the plaintiff seeks relief the IDEA can provide, the plaintiff ordinarily must complete the IDEA process before pursuing related ADA, Rehabilitation Act, or other federal claims. *Alzandani*, 176 F.4th at 460; *see also Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165 169 (2017).

By contrast, § 1415(l) does not require exhaustion of a claim seeking only a remedy unavailable under the IDEA, such as compensatory damages. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147-150 (2023). The parents in *Alzandani* attempted to avoid exhaustion by characterizing the violations as systemic and the administrative process as futile. 176 F.4th at 460. The Sixth Circuit rejected this argument as well, finding that such allegations did not permit the plaintiffs to bypass the statutory process. The Court opined that allegations of systemic violations, "serious as they doubtless may be, do not permit a claimant to displace the preconditions for creating a right of action." *Id.* at 461. Nor, from the court's perspective, was the administrative process futile merely because the alleged violations resulted from broader institutional problems. *Id.* at 463-464. The due-process hearing remained capable of determining whether each child had received a FAPE, identifying the nature of any violation, ordering individualized relief, and developing an administrative record for any later federal action. *Id.* at 464. The same reasoning controls here.

Plaintiffs have never disputed that they did not complete a due-process hearing and obtain a final administrative decision before filing this lawsuit. Rather, from the outset, Plaintiffs have maintained that the administrative steps they did pursue were sufficient to demonstrate that further exhaustion would be futile. The Complaint relies on numerous MDE state complaints, mediation, and alternative dispute-resolution efforts, several of which allegedly produced substantiated violations. ECF No. 1, PageID.22-23. In opposing dismissal, Plaintiffs reiterated that they had not bypassed the administrative process because they had repeatedly invoked MDE's complaint mechanisms and argued that further effort within that same structure would not remedy the injuries they allege. *See* ECF No. 32, PageID.787-788. Plaintiffs refined that position after *Alzandani* was decided, but did not materially change it. In response to a later-filed motion to dismiss, Plaintiffs characterized Defendants' exhaustion argument as "overbroad," again emphasizing their state complaints, mediation, and alternative dispute-resolution efforts, and arguing that the alleged inconsistency between MDE OSE's published guidance and its complaint decisions established "structural futility." ECF No. 69, PageID.1537.

Plaintiffs also argued that some of their discrimination, retaliation, and records claims seek relief unavailable under the IDEA and therefore fall outside § 1415(l) under *Luna Perez*. *Id.* Defendants responded that participation in the state's complaint process does not substitute for the due-process hearing and decision

required by the IDEA and that *Alzandani* forecloses Plaintiffs' reliance on structural futility to avoid that requirement. ECF No. 70, PageID.1551. The Court agrees. The distinction Plaintiffs attempt to draw between a conventional systemic-violations theory and their asserted challenge to the adequacy of MDE's complaint process does not take this case outside the scope of *Alzandani's* holding. The parents there also sought state administrative intervention and, in two instances, obtained favorable MDE findings and corrective-action plans before proceeding to federal court. *Alzandani*, 176 F.4th at 458. Those efforts did not substitute for the due-process hearing Congress prescribed. Neither do Plaintiffs' efforts here.

The particular violations alleged in this case likewise do not meaningfully distinguish it from *Alzandani*. Plaintiffs point to recurring backdating of IEPs, predetermined eligibility and service decisions, improper exits from HPS's special education program, obstruction of parental participation, records deficiencies, and MDE's alleged failure to correct those practices through the state-complaint process. ECF No. 1, PageID.22-23. But each alleged practice is ultimately tied to the identification, evaluation, services, placement, or educational programming of one or more of the three minor children. *See* Alzandani, 176 F.4th at 460 (Parents "must complete the administrative process in seeking relief under the ADA and the Rehabilitation Act . . . if the [FAPE denial] is 'the crux' or 'gravamen' of the parent's complaint.") (quoting *Fry*, 580 U.S. at 169).

Indeed, Plaintiffs themselves allege that Defendants' collective conduct "deprived the children of FAPE," and seek relief that includes "compensatory education, tuition reimbursement," restoration of special education services, stay-put protection, correction of educational records, and other prospective relief available under the IDEA. *Id.* at PageID.25, 32-34. An IDEA due-process hearing here would serve the exact purpose that *Alzandani* says the administrative process is designed for: determining what happened to each child, whether the educational services and procedures afforded to that child complied with the IDEA, what individualized relief is warranted, and providing a developed administrative record to guide the Court if the dispute later returns to federal court. *See Alzandani*, 176 F.4th at 464. The Court therefore finds that prior administrative efforts failing to produce the ultimate correction Plaintiffs seek do not render the statutorily required process futile.

Nor does Plaintiffs' inclusion of claims under § 504, the ADA, federal records requirements, and § 1983 permit the Court to adjudicate the merits of this action now. In the briefing, Plaintiffs emphasize that certain theories challenge MDE's own administration of the complaint and oversight process and that some claims seek remedies unavailable under IDEA. *See* ECF No. 32, PageID.787-792; ECF No. 69, PageID.1537. But the Complaint incorporates the same alleged conduct across those claims: removal from eligibility, reduction or alteration of special-education

services, failure to implement IEPs, inadequate accommodations, inaccurate educational records affecting the IEP process, and retaliation arising from Jane Doe's advocacy for the children's special-education/FAPE rights. ECF No. 1, PageID.25-32. The Complaint likewise seeks substantial equitable relief available through the IDEA process. *Id.* at PageID.32-34. Thus, notwithstanding the additional statutory and constitutional labels, the alleged denial of a FAPE lies at the heart of this action. *See Fry*, 580 U.S. at 169; *Alzandani*, 176 F.4th at 460.

To be sure, Plaintiffs also seek compensatory and punitive damages under statutes other than the IDEA, and they invoke *Luna Perez* to argue that claims seeking relief unavailable under IDEA do not require exhaustion. *See* ECF No. 69, PageID.1537. *Luna Perez* indeed makes clear that § 1415(l) does not independently require exhaustion of a non-IDEA action seeking **only** relief unavailable under the IDEA. 598 U.S. at 147-150. But this action does not seek only such relief. Once more, Plaintiffs' request for relief confirms what the substance of the allegations already demonstrates. This action seeks judicial redress for ongoing harms centered on the alleged denial of a FAPE for special-education students. The IDEA requires Plaintiffs to complete its administrative process before asking this Court to adjudicate those disputes. The Court does not minimize Plaintiffs' allegations, decide whether any Defendants' conduct was lawful or whether Plaintiffs will ultimately be entitled to relief after exhaustion. Such questions are simply

premature. According to the recent Sixth Circuit precedent, Plaintiffs must first present their disputes through the process Congress set forth, and they have not yet done so.

**B. Dismissal Rather Than Stay**

The Court further finds that dismissal without prejudice, rather than a stay of this action, is appropriate because the Sixth Circuit's reasoning in *Alzandani* treats completion of the due-process hearing as a condition precedent to the statutory right of action. 176 F.4th at 459. Where no due-process hearing has occurred, and no administrative decision exists, there can be no exhausted dispute to hold in abeyance while the parties complete the administrative proceedings. Plaintiffs must fully exhaust the administrative remedies available under the IDEA and, if they remain aggrieved after completing that process, may return to federal court. Because this threshold issue requires dismissal of the action, the Court declines to address Defendants' remaining arguments for dismissal at this time.

**C. Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs also move for preliminary injunctive relief concerning the minor children's special-education services and placements. ECF No. 59. Because the Court concludes that Plaintiffs prematurely filed this action and dismisses the Complaint without prejudice pending exhaustion, no claims remain before the Court upon which preliminary relief may be granted. Plaintiffs are free to raise these issues

through the administrative process, if they so desire. Plaintiffs' Motion for Preliminary Injunction is therefore moot.

**III.**

Accordingly, for the reasons stated above, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 17, 22, 28, 30, 50, 64).

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** so that Plaintiffs may pursue any appropriate civil action after exhausting the administrative remedies required by the IDEA.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (ECF No. 59) is **DENIED AS MOOT**.

***This is a final order that closes the case.***

**IT IS SO ORDERED.**

Dated: August 24, 2026

s/Brandy R. McMillion
Hon. Brandy R. McMillion
United States District Judge